# EXHIBIT "B"

Case 1:03-cv-12282-MBB    Document 27-6    Filed 10/18/2005    Page 1 of 9

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KENNETH R. MERCER and ) | |
| CYNTHIA MERCER ) | |
|     Plaintiffs ) | |
| ) | |
| vs. ) | CIVIL ACTION NUMBER: 1:03-CV-12282 MBB |
| ) | |
| RYDER TRUCK RENTAL, INC. ) | |
| and ) | |
| WALTCO TRUCKING ) | |
| EQUIPMENT COMPANY ) | |
|     Defendants ) | |

ANSWERS OF THE PLAINTIFF KENNETH R. MERCER
TO WALTCO TRUCK EQUIPMENT COMPANY'S
FIRST SET OF INTERROGATORIES

Objection

The plaintiff, through counsel, objects to the defendant's three pages of Definitions and Instructions. Without waiving said objection, the plaintiff Answers as follows:

INTERROGATORY NO. 1

Please identify, by manufacturer, model, serial number, or other unique identifier the specific lift gate at issue in this lawsuit.

ANSWER NO. 1

The manufacturer of the lift gate was Waltco Model No. 203R/S, Serial No. 384067. The Truck No. was 2275.

INTERROGATORY NO. 2

Please identify the present location of the gate at issue in this lawsuit, and if such location is not known, identify any individuals who plaintiff believes are or may be aware of the present location of the lift gate.

**ANSWER NO. 2**

It is my understanding that the truck in currently in the possession of Garelick Farms.

**INTERROGATORY NO. 3**

Please identify each person with knowledge of the facts, circumstances and claims alleged in the Complaint, including any medical witnesses and any Garelick Farms, Ryder Truck Rental or Waltco employees.

**ANSWER NO. 3**

Obviously, my medical providers, doctors and nurses would have knowledge as to my medical condition. In addition, Robin Hamel of Garelick Farms was the Human Resources person who had indicated to me, after my accident, that this particular lift had been written up in the past. The plaintiff agrees to seasonably supplement this Answer if and when more information becomes available.

**INTERROGATORY NO. 4**

Please state who was responsible for the repair and maintenance of the lift gate at issue in this lawsuit.

**ANSWER NO. 4**

It is my understanding that Ryder Truck Rental was responsible for the maintenance of the vehicle and the lift gate in question.

**INTERROGATORY NO. 5**

Please state whether Mercer was aware of any mechanical problems or other complaints concerning the operation of the lift gate at issue in this lawsuit. If plaintiff was aware of any such problems and/or complaints, please state:

a.  The nature of the problem and/or complaint;

b.  When plaintiff became aware of such problems and/or complaints;

c.  How plaintiff became aware of such problems and/or complaints; and

d.  The source of Mercer's information concerning such problems and/or complaints.

## ANSWER NO. 5

a-d.   Prior to my accident I was not aware of any problems with the lift gate. Following my accident, based upon the conversation I had with Robin Hamel, I was informed that there had been prior problems with this lift gate.

## INTERROGATORY NO. 6

Please state whether plaintiff ever reported or complained about any mechanical problems or other complaints concerning the operation of the lift gate at issue in this lawsuit. If plaintiff ever made such a report or complaint, please state:

a. The nature of the problem and/or complaint;

b. What plaintiff said about the operation of the lift gate;

c. To whom plaintiff reported or complained about the alleged mechanical problem or other complaint; and

d. What response, if any, plaintiff received to his report or complaint.

## ANSWER NO. 6

Following my accident, I filed a Post-Trip Inspection form. This is a standardized form. I submitted it when I returned to Garelick Farms. I submitted it to Ryder Truck Rental, as they maintained the vehicle. The Ryder people actually work on the premises of Garelick Farms maintaining Garelick Farms' vehicles. In addition, I was aware in that time frame that there was some difficulty with Ryder not repairing trucks and that Post-Trip repair complaints had been issued. Consequently, I submitted a second complaint upstairs to the Wholesale Department where we are required to turn in our paperwork. My complaint was that the lift had improperly dropped down based up the weight that had been place on it. I never received a response to those complaints. I assume, but do not know, if the lift was actually fixed.

## INTERROGATORY NO. 7

Please state whether you or anyone acting on your behalf have conducted any tests, investigations or analyses on the lift gate at issue in this lawsuit. In your answer, identify the time, manner and place of the investigation; identify the individual(s) who conducted the investigation; and state the conclusions of any such investigation.

## ANSWER NO. 7

At this time, neither I nor my attorney have conducted a test on the lift.

## INTERROGATORY NO. 8

Please describe any inspection, testing, review, observation or attempts to verify the operation of the lift gate at issue in this lawsuit that you performed or conducted before beginning your route or at any other time on September 30, 2000.

## ANSWER NO. 8

Before taking the truck in question out on the road on the date of my accident, I would have done a pre-trip inspection of the entire truck. That inspection would have included operation of the lift gate, bringing it from a stored position to a fully retracted/down position and then putting it back up into the stored position. In my pre-trip inspection I would not have put any weight on the lift. That is the standard manner in which you conduct a pre-trip inspection, and it is the way I had always done a pre-trip inspection of similar vehicles.

## INTERROGATORY NO. 9

Please describe how the lift gate at issue in this lawsuit operated and performed before the incident that you describe in Paragraph 11 of your Complaint. In answering this interrogatory, please describe the operation and performance of the lift gate from January 1, 2000 through September 30, 2000.

## ANSWER NO. 9

I have no personal knowledge as to how the lift gate in question operated from January 1, 2000 through September 30, 2000. This was not my usual truck. However, the operation of this lift gate was exactly the same as the truck I ordinarily operated. That is, with the lift gate in the stored position at the back of the truck, if I wanted to lower the lift gate I would take the following steps: First, I would push forward on the outside lever, which would automatically unfold the lift gate to a horizontal position. Second, when the lift gate is at the horizontal position, it is a bifold platform. I would then manually fold out the second half of that platform so that I had a fully extended lift gate. The third step would be to bring the entire platform up to the level of the box bed. I would them climb up into the back of the box bed by climbing a small ladder and using the handle alongside the truck.

At the time of my accident, what was different about the lift was that I had pulled two stacks of dairy products out of the bed of the truck and positioned them on the lift platform so that I could re-organize the product I had in my truck. My estimate on the weight of those two stacks would be somewhere around 400 pounds [140 to 200 pounds per stack]. Without my knowledge, as I went to bring a third stack out onto the platform, but before I actually got the stack out onto the platform, the platform itself dropped a distance of between 6 to 8 inches.

## INTERROGATORY NO. 10

Please identify all items that were placed on the lift gate at the time of the incident that you describe in Paragraph 11 of your Complaint.

## ANSWER NO. 10

At the time of my accident, I had two stacks of dairy product. Each stack weighed somewhere between 140 and 200 pounds per stack. My memory is that the first stack I pulled out was pints, quarts and half gallons of milk. This would have been the lighter of the two stacks. My memory is that the next stack was a combination of fruit juices, skim milk and creamers. This would have been the heavier of the two stacks. The third stack, which never made it onto the platform, was a stack of one gallon, 1% milk.

## INTERROGATORY NO. 11

Please identify each person whom you intend to call as a witness at the trial of this matter.

## ANSWER NO. 11

I am informed by my attorney that no witness list has been prepared at this time.

## INTERROGATORY NO. 12

Please identify each person whom you intend to call as an expert witness at the trial of this matter, and provide the following additional information separately with respect to each such expert:

1. a statement of the subject matter on which he or she is expected to testify;

2. the substance of the facts to which he or she is expected to testify;

3. the substance of the opinion(s) to which he or she is expected to testify;

4. a summary of the grounds for each opinion identified in (iii);

5. the formal education of each expert;

6. each job or position each expert has had in his or her area of expertise and the dates of such employment;

7. all membership and professional societies to which each expert belongs;

8. a list of all his or her publications in his or her field of expertise; and

9. any other aspects of the expert's background, education or training that form all or part of the basis for qualifying the witness as an expert in this case.

**ANSWER NO. 12**

1-9. I am informed by my attorney that no expert witness has been selected for trial testimony at this time. If and when an expert is selected for trial testimony, this Answer will be formally supplemented.

**INTERROGATORY NO. 13**

Please state the basis fro the allegations in Paragraph 12 of your Complaint.

**ANSWER NO. 13**

As discovery is ongoing, this Answer will be formally supplemented.

**INTERROGATORY NO. 14**

Please state the basis for the allegations in Paragraphs 19-20 of your Complaint.

**ANSWER NO. 14**

As discovery is ongoing, this Answer will be formally supplemented.

**INTERROGATORY NO. 15**

Please describe in detail the incident in which you allege that you sustained the injuries alleged in Paragraph 13 of your Complaint. If your answer, please include descriptions of the time and location of the incident; the operation of the lift gate; what you placed on the lift gate; the position of the lift gate; and the distance that you claim the lift gate "lowered" as you state in Paragraph 11 of your Complaint.

**ANSWER NO. 15**

My accident occurred in the early morning hours of September 30, 2000. It would have been my normal practice at that time to punch it at approximately 2:00 a.m. I would have performed a pre-trip inspection until approximately 2:30 a.m. At that point in time, I would have driven approximately 1 hour to the White Hen Pantry in Lawrence, MA. Once I arrived at the White Hen Pantry in Lawrence, I would have operated the lift gate in the same manner as described before. I would have brought the lift gate up to a level that was even, or level, with the bed of the box of the truck. I then needed to figure out which product was being delivered to the White Hen Pantry. Consequently, and typical of my normal route, at the time I reached my first stop I would need to start the process of organizing my delivery, not only to the White Hen Pantry but for my later deliveries that morning. Consequently, I pulled 2 stacks of product from

the back of the truck and put it onto the lift gate. There was somewhere between 280 and 400 pounds of product on the lift gate. I was then in the process of sliding a third stack of product onto the lift gate when my accident occurred.

As to the precise manner of my accident, I had stacked the 2 stacks of product onto the right-hand side [if one was looking at the back of the truck] of the platform. I was then maneuvering the third stack along the center and left-hand side of the truck bed. As I approached the edge of the truck bed, I stepped back with my right foot expecting the platform to be level with the truck bed. It was not. It was between 6 and 8 inches lower. As my right foot found the surface of the platform, my back arched and twisted. I stepped back with my left foot feeling a sharp and immediate stabbing pain in my left thigh and buttocks/lower back area. As I was losing balance, I was simultaneously worried about a stack of product falling on me, and I remember pushing the stack of product back into the truck. My knees buckled from the pain, and I remained in a kneeling position, leaning forward into the truck, for several minutes following the accident, knowing that I had injured myself.

### INTERROGATORY NO. 16

Please describe the first medical evaluation and treatment that you sought or received for the injuries that you allege in your Complaint. In your answer, please identify: the date and time of the treatment; the medical personnel (including physicians, nurses, emergency medical personnel and radiologic technicians) and any documents relating to your initial evaluation or treatment.

### ANSWER NO. 16

I first sought medical care on Monday morning. It was my intent to get treatment from my primary care physician, Dr. Ciak. Dr. Ciak was not on duty that morning, and I was referred to Dr. Kohler at the Franklin Medical Center, Franklin, MA. It is my understanding that a complete copy of my medical records have been provided.

SIGNED UNDER THE PENALTIES OF PERJURY THIS   DAY OF DECEMBER, 24 2004.

*Kenneth R Mercer*
KENNETH R. MERCER

As to Objections

Brian C. Dever, Esq.-BBO #544203
KECHES & MALLEN, P.C.
122 Dean Street
Taunton, MA 02780
(508) 822-2000

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KENNETH R. MERCER and<br>CYNTHIA MERCER )<br>)<br>)<br>v.                            )   CIVIL ACTION NO: 03-12282-MBB<br>)<br>RYDER TRUCK RENTAL, INC. )<br>and                            )<br>WALTCO TRUCKING      )<br>EQUIPMENT COMPANY  ) | |

### CERTIFICATE OF SERVICE

I, Brian C. Dever, Esquire, of the law firm of Keches & Mallen, P.C., attorney for the plaintiffs in this action, hereby certify that on the 14th day of January, 2005, I served a copy of the foregoing:

1. Answers of the Plaintiff Kenneth R. Mercer to Ryder Truck Rental Inc.'s First Set of Interrogatories; and

2. Answers of the Plaintiff Kenneth R. Mercer to Waltco Truck Equipment Company's First Set of Interrogatories

by mailing, first class, postage prepaid, to all counsel of records, as follows:

Dennis L. Galvin, Esq.
Tentindo, Kendall, Canniff & Keefe, LLP
C-3 Shipway Place
Boston, MA 02129

Steven J. Buttacavoli, Esq.
Piper Rudnick, LLP
One International Place, 21st Floor
Boston, MA 02110-2600

Brian C. Dever, Esq.-BBO #544203
KECHES & MALLEN, P.C.
122 Dean Street
Taunton, MA 02780
Tel. No: (508) 822-2000