UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KENNETH R. MERCER, and )
CYNTHIA MERCER )
)
Plaintiffs, )
v. ) CIVIL ACTION NUMBER
) 1:03-CV-12282 MBB
RYDER TRUCK RENTAL, INC. and )
WALTCO TRUCK EQUIPMENT COMPANY )
Defendants. )

Case 1:03-cv-12282-MBB    Document 27-2    Filed 10/18/2005    Page 1 of 22

**DEFENDANT, WALTCO TRUCK EQUIPMENT COMPANY'S
MEMORANDUM OF LAW IN SUPPORT OF MOTION OF FOR SUMMARY
JUDGMENT PURSUANT TO FED. R. CIV. P. 56**

Defendant, Waltco Truck Equipment Company ("Waltco") respectfully submits this memorandum in support of its Motion for Summary Judgment.

### Introduction

Summary judgment must be entered for Waltco in this product liability action in which plaintiff alleges that Defendant Waltco manufactured and/or sold a hydraulic lift gate which was then attached to the tailgate of a delivery truck. The plaintiff further alleges that he was using the lift gate at the time of the alleged accident, but that the lift gate failed to maintain hydraulic pressure, causing him to trip and lose his balance and ultimately sustain injuries. Plaintiff's answers to interrogatories and deposition testimony have revealed that he has no evidence from which a jury could find in his favor on any of his claims against Defendant Waltco. More particularly, plaintiff has revealed no facts suggesting that the Waltco lift gate he allegedly used differed from its intended design (essential to his manufacturing defect claim), no facts suggesting that there was some other feasible design that would have enabled the product to carry out its function as

successfully and at a reasonable cost without the dangers he alleged in his Complaint (essential to his design defect claim), no facts suggesting that Defendant Waltco failed to warn of some significant, non-obvious risk of its products (essential to his failure-to-warn claim), no facts suggesting the existence of an affirmation of fact, promise, description, sample or model about Defendant Waltco's products that formed the basis of the bargain

(essential to his breach of express warranty claim) and no facts suggesting that Defendant Waltco knew that its alleged buyer intended to use Defendant Waltco's products for particular purposes that differed from their ordinary purposes and that the products were not suitable for this use (essential to his breach of implied warranty of fitness claim). Under Fed.R.Civ.P. 11, plaintiff was required to have "evidentiary support" for his claims prior to filing suit, and he is required to have such support to continue to press his claims now. Lacking it, summary judgment must be entered.

Additionally, summary judgment must be entered on Waltco's behalf due to the failure of the plaintiff and the co-defendant to notify Waltco of the alleged accident until over three years after the alleged accident, at a point long after the product at issue had been modified by co-defendant Ryder Truck Rental, Inc., including the replacement of key parts and the performance of other maintenance to it. Waltco has been severely prejudiced by its inability to inspect the lift gate prior to any post-accident modification. Moreover, because the plaintiff's own expert did not inspect the lift gate until well after post-accident modifications had been made, his opinions are necessarily based on speculation and must be excluded.

## Facts[1]

### A.    Plaintiff's Claims

Plaintiff, Kevin Mercer ("plaintiff" or "Mercer"), filed his Complaint on August 11, 2003. He alleged that on September 30, 2000, he was a delivery driver for Garelick Farms, Inc. ("Garelick Farms") who allegedly sustained personal injuries when a rear

loading hydraulic platform manufactured by Waltco that he was using unexpectedly and without warning lowered. See Complaint at paragraphs 10-11, Exhibit "A". He alleges that the co-defendant Ryder Truck Rental Company, Inc. ("Ryder" or "co-defendant") was responsible for maintaining the lift gate. The plaintiff alleges that Waltco is liable to him for those injuries under theories of negligent manufacture and design, negligent marketing and sale and negligent failure to warn (Count I), Id. at paragraph 12, breach of implied warranty of merchantability (Count III), Id. at paragraph 19, and breach of implied warranty of fitness for a particular purpose (Count III), Id. at paragraph 19.

### B.    Waltco's Request for the Factual Basis of Plaintiff's Claims

Seeking some particulars about the nature and factual basis for plaintiff's claims, Waltco served "contention interrogatories" on plaintiff pursuant to Fed.R.Civ.P. 33 (c). Pursuant to Local Rule 26.5 (C)(8), Waltco asked plaintiff to state the nature and grounds for each of his claims. See Answers of the Plaintiff Kenneth Mercer to Waltco Truck Equipment Company's First Set of Interrogatories, Ex. "B", No. 13, 14. As set forth more fully below, however, despite answers, document responses and answers to a full day of deposition questions, the plaintiff has been unable to offer any factual support for any of his claims against Waltco.

---

[1] Pursuant to L.R. 56.1, Waltco submits the following facts as undisputed for the purposes of this motion only. Waltco reserves its right to contest any or all of these facts at a later date.

**C.    Plaintiff's Lack of Evidence Supporting His Negligence Claims**

In Interrogatory Number 13, Waltco requested that the plaintiff state the basis for

the allegations in Paragraph 12 of his Complaint.    In that paragraph of plaintiff's

Complaint, he alleged Waltco:

- negligently or inadequately marketed and maintained an inherently unsafe hydraulic platform that was inadequately to accommodate the weight of the load and unexpectedly and without warning lowered;
- negligently or inadequately designed, developed, manufactured, tested, inspected, promoted, marketed, sold and distributed the hydraulic platform;
- negligently tested or inspected the hydraulic platform;
- negligently failed to give warnings or instructions or adequate instructions to the Plaintiff or his employer of the risk of likelihood of the danger involved in using the hydraulic platform;
- negligently placed in the channels of trade a product which it knew, or with reasonable care should have known, was dangerous and defective in the nature and design, or in a dangerous and defective condition, and negligently placed said product in the channels of trade in a manner which the defendant foresaw or in the exercise of due care should have foreseen would probably carry said product into contact with persons such as the plaintiff, and negligently failed to use reasonable care to prevent injury to such persons including the plaintiff.

Ex. A, para. 12.    In response, plaintiff did not identify any specific design or

manufacturing defect(s), nor did he identify what warning he believed was inadequate, or

for that matter state exactly what type of warning he believed would have prevented the

accident from happening.    Instead, the plaintiff merely stated that "as discovery is

ongoing, this Answer will be supplemented." Ex. B, Ans. No. 13.  As further described

below, the plaintiff was unable to articulate any factual basis for his negligence claims at

the time of his deposition.

**D.    Plaintiff's Lack of Evidence Supporting His Breach of Express or Implied Warranty Claims**

In Interrogatory Number 14, Waltco asked the basis for the plaintiff's allegations

in paragraphs 18 and 19 of the plaintiff's Complaint, in which the plaintiff alleged that

Waltco made "express and implied warranties of safety, fitness and merchantability"

4

regarding the "ordinary" and "particular" purposes to which the lift gate was being used at the time of the accident, and that these warranties were "relied on" by the plaintiff. Ex. A, para. 18-19.    The plaintiff alleged that Waltco "breached" those warranties because the hydraulic platform was "not safe, not merchantable, not fit for. . . ordinary purposes. . .or. . . particular purposes".    The plaintiff further alleges that Waltco did not give

adequate warnings regarding a "fiberglass bucket". Id.  The plaintiff states that "timely notice" of Waltco's breach was given to Waltco. Id. In his interrogatory answer, the plaintiff again merely stated that discovery was ongoing and that the "Answer will be formally supplemented." Ex. B, Ans. No. 14.  At his deposition, the plaintiff confirmed that he had no idea how or when the lift gate was purchased.  He had never seen any of the product literature for the lift gate either.  In fact, the plaintiff was not even aware of who the lift gate's manufacturer was as of the date of the accident.  See Deposition transcript of Plaintiff Kenneth Mercer, Ex. "C", at p. 158-159.  Furthermore, with respect to the express warranty claim, he has failed to identify any representation by Defendant Waltco, upon which he claims to have relied. Id. at 105, 158-159.

**E.    Plaintiff's Failure to Notify Waltco of Claim Prior to Modification of the Lift Gate by co-Defendant Ryder.**

The plaintiff did not put Waltco on notice of his claim until October 27, 2003— over three years after the alleged accident—when Waltco was served with the plaintiff's Complaint. Ex. B, Ans. No. 8.  However, the Complaint itself does not specifically identify a Waltco product by model or serial number, but rather merely alleges that the plaintiff "used a rear loading hydraulic platform which was manufactured by the Defendant, Waltco Truck Equipment Company." Ex. A, p. 2.  It was not until November 10, 2004, in a letter from plaintiff's counsel to Waltco's former counsel, that the plaintiff

identified "model number SP-9957" as the lift gate in question.  See Correspondence

from Brian Dever Esq. to Steven J. Buttacavoli, Esq., dated November 10, 2004, Ex. "D".

On January 14, 2005, Plaintiff served his answers to Waltco's first set of interrogatories,

finally identifying the alleged product at issue as "Waltco Model No. 203R/S, Serial No.

384067".  See Answers of the Plaintiff Kenneth R. Mercer to Waltco Truck Equipment

Company's First Set of Interrogatories, Ex. "B", No. 1.

As further described below, the truck at issue was driven about 145,000 miles

between the date of the accident and when Waltco was informed of the suit.  See Driver's

Vehicle Condition Reports, Ex. "E", report dated October 27, 2003.    Moreover, it

underwent extensive pre- and post-accident changes, including not only routine

maintenance but also the replacement of key components including the replacement of

spring, torsion and lift/tilt controls on December 2, 2002 and the replacement of the

hydraulic lift reservoir on November 12, 2002.  See Vehicle Control Card, Ex. "F".

Consequently, by the time that the plaintiff notified Waltco of the suit, the product

identified by the plaintiff in his Complaint had been modified to such an extent that any

later inspections were of limited value and could not properly form the basis of the

plaintiff's expert opinion testimony.

### Argument

Summary judgment is appropriate when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Once the moving party asserts "an

absence of evidence to support the nonmoving party's case," Celotex Corp. v. Catrett, 477

U.S. 317, 325 (1986), the latter must establish the existence of an issue that is both

"genuine" and "material," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

"There is no issue for trial unless there is sufficient evidence favoring the nonmoving

party for a jury to return a verdict for that party." Id. at 249-250.  Where the non-moving

party bears the burden of proof, it may not defeat summary judgment by relying upon

mere allegations or evidence that is "merely colorable" or "not significantly probative."

Id.  Rather, the party must produce sufficient admissible evidence to support a jury

verdict.  Garside v. Osco Drug, Inc., 895 F.2d 46, 49-50 (1st Cir. 1990) (plaintiff must

refute summary judgment motion by evidence admissible at trial).  The non-moving party

cannot fend off summary judgment unless it can demonstrate that every essential element

of its claim or defense is at least trialworthy.  See Price v. General Motors Corp., 931

F.2d 162, 164 (C.A. Mass. 1991).

Moreover, a party may not commence an action with no actual basis and then

seek to use discovery to find such a basis.  "Discovery is not a 'fishing expedition';

parties must disclose some relevant factual basis for their claim before requested

discovery will be allowed."    Milazzo v. Sentry Ins., 856 F.2d 321, 322 (1st Cir. 1988)

(emphasis added), citing MacKnight v. Leonard Morse Hosp., 828 F.2d 48, 52 (1st Cir.

1987).  Accord, Bruno & Stillman, Inc. v. Globe Newspaper Co., 633 F.2d 583, 597 (1st

Cir. 1980) (before compelling discovery "the court should be satisfied that a claim is not

frivolous, a pretense for using discovery powers in a fishing expedition"); Hicks v.

Brysch, 989 F.Supp. 797, 809 (W.D. Tex. 1997) ("Rule 56 does not require that

discovery take place before the Court may grant a summary judgment.  '[Putting a party

on notice that she must come forward with all her evidence] is not a license for a fishing

expedition for evidence'"), quoting Nowlin v. Resolution Trust Corp., 33 F.3d 498, 505 (5th Cir. 1994).

To the contrary, Fed. R. Civ. P. 11(b)(3) expressly requires that a plaintiff filing a Complaint in the first place, or subsequently advocating in support of his pleading, certify, "that to the best of [plaintiff's] knowledge, information and belief, formed after an inquiry reasonable under the circumstances, . . . the allegations and other factual

contentions have evidentiary support." Fed. R. Civ. P. 11(b)(3) (emphasis added); See also Protective Life Ins. Co v. Dignity Viatical Settlement Partners, 171 F.3d 52, 56 n.2 (1st Cir. 1999) ("Fed. R. Civ. P. 11 creates, inter alia, standards of reasonable inquiry for legal and factual contentions embodied in pleadings and presented to a court").[2] "Obtaining answers to contention interrogatories early on during the pretrial stage can expose a substantial basis for a motion under Rule 11 or Rule 56, and thus lead to an expeditious and inexpensive determination of a lawsuit." King v. E.F. Hutton & Co, Inc., 117 F.R.D. 2, 7 n. 5 (D. D.C. 1987).

Of course, while there are limited circumstances under which a plaintiff may be permitted particularized discovery before summary judgment is granted, a plaintiff cannot do this where "the relevant facts with which to contradict . . . [defendant's summary judgment grounds] were not solely and exclusively within the defendants' possession." MacKnight, 828 F.2d at 51 (emphasis added).

---

[2] Under some circumstances, a plaintiff is permitted to press his claims by certifying that his allegations, "if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3) (emphasis added). But "[t]olerance of factual contentions in initial pleadings by plaintiffs . . . when specifically identified as made on information or belief does not relieve litigants from the obligation to conduct an appropriate investigation into the facts that is reasonable under the circumstances; it is not a license to join parties [or] make claims . . . without any factual basis or justification." Fed. R. Civ. P. 11 advisory committee's note (emphasis added). In his Complaint, plaintiff did not specifically identify any of his contentions as being made on information and belief.

In the present case, as discussed in greater detail below, discovery has revealed that plaintiff is attempting to do precisely what he may not do, i.e., conduct a "fishing expedition" to discover whether any factual basis exists for any of his claims when such basis is not solely and exclusively within Waltco's possession.  After being given the opportunity to answer contention interrogatories and a full day to answer deposition

questions, his "responses" show that he has proceeded in this suit without having any evidence supporting the basic liability elements against Waltco on any of his claims. Accordingly, summary judgment must be entered for Waltco.

Moreover, to the extent that the plaintiff intends to rely on the anticipated testimony of any experts in response to this motion, he must not be allowed to do so because of his spoliation of evidence and/or his failure to place Waltco on notice of the claim (and to have his own expert examine the lift gate) prior to the extensive modification of the lift gate by co-defendant Ryder.

## I.    Plaintiff Has No Evidence From Which A Reasonable Jury Could Find That Waltco Negligently Manufactured A Product That He Allegedly Used

An essential element of plaintiff's manufacturing defect claim, whether asserted under either a negligence or implied warranty theory, is that when comparing "the propensities of the product as sold with those which the product's designer intended it to have," there is a deviation from design that renders the product unreasonably dangerous and unfit for its ordinary purposes.  Back v. Wickes, 375 Mass. 633, 641 (1978).  Not only is the plaintiff unable to demonstrate that there was a deviation from design relative to any Waltco product he allegedly used, even if he could show such a deviation there is no evidence that any particular product with such a deviation came from Waltco.

9

Plaintiff's discovery responses provide no support whatsoever for a manufacturing defect claim. In plaintiff's Answer Number 13 to defendant Waltco's interrogatories, the plaintiff essentially concedes that there is no basis for his claim that Waltco negligently marketed, designed, developed, manufactured, tested, inspected, promoted, marketed, sold, distributed, "placed in the channels of trade" the product that

forms the basis of the suit. Ex. A, para. 12; Ex. B, Ans. No. 13. Specifically, in response to Waltco's interrogatory seeking the basis for the plaintiff's allegations that Waltco was negligent, Mercer avoids the issue altogether, stating merely that "[a]s discovery is ongoing, this Answer will be formally supplemented." Similarly, in answering Waltco's contention interrogatory regarding the basis of the plaintiffs' express and implied warranty claims, the plaintiff merely stated that "[a]s discovery is ongoing, this Answer will be formally supplemented." Ex. B, Ans. No. 14. Neither of these Answers provides any factual underpinning for the plaintiff's claim that the Waltco product he allegedly used deviated in some manner from its design.

The plaintiff's lack of evidence of a manufacturing defect is not surprising in light of the fact that he did not arrange for or conduct any expert inspection and testing of the actual product that allegedly caused him harm until over four years after the alleged incident. He simply has no basis for his manufacturing defect claim.

## II.     Plaintiff Has No Evidence From Which A Reasonable Jury Could Find That Waltco's Products Were Defectively Designed

Plaintiff similarly has no evidence to support his design defect claim. To establish such a claim either under of theory of negligence or breach of implied warranty of merchantability, plaintiff must show that Waltco's "product was unreasonably dangerous or unsuited for ordinary use at the time it left the defendant's hands because of

a defect" in the product's design.  Wajda v. R.J. Reynolds Tobacco Co., 103 F.Supp.2d

29, 34 (D.Mass. 2000).    Thus, as a threshold issue under the implied warranty of

merchantability theory, the plaintiff must demonstrate that a warranty was made by the

defendant.    G.L. c.106, §2-314.    A warranty of merchantability is implied in two

situations: "(1) when title to goods passes for a price and, (2) when a contract is made for

the future passing of title to goods for a price."[3]   In the instant case, the plaintiff has not

demonstrated any evidence that Waltco engaged in the sale of the lift gate that forms the

basis of his suit.    It also has failed to produce any evidence that Defendant Waltco

entered a contract for the sale of any lift gate that was allegedly used by the plaintiff, or

entered into a leasing arrangement for any such lift gates.    The plaintiff has produced no

sales records identifying a Waltco product.    He could not identify any Waltco products at

his deposition, either, as evidenced by the following exchange:

> Q.    Okay.  Have you seen any lift gates manufactured by a company, other
>        than Waltco, on any of the Garelick trucks?
> A.    I'm not really familiar who manufactures these.
> Q.    Right.  Well, you know you've sued Waltco; correct?
> A.    Correct.
> Q.    And back at the time of this accident, did you know that Waltco made the
>        lift gate?
> A.    I didn't know who Waltco was.
> Q.    Did you ever see their—the name "Waltco" in yellow on the back of lift
>        gates?
> A.    I'm not sure I have.

Ex. C, Mercer dep. at 158-159.  Accordingly, the plaintiff's claim for breach of warranty

of merchantability should fail on these preliminary grounds alone.

With regard to the substance of plaintiff's design defect claim, critical factors in

determining whether a design defect exists include "the gravity of the danger posed by

---

[3] A warranty of merchantability is also implied in leases of goods.  Back v. Wickes Corp., 375 Mass. 633,
639 (1978).

the challenged design, the likelihood that such danger would occur, the mechanical

feasibility of a safer alternative design, the financial cost of an improved design, and the

adverse consequences to the product and to the consumer that would result from an

alternative design." Back, 375 Mass. at 642 (listing elements under warranty theory); see

also, Colter v. Barber-Greene Co., 403 Mass. 50, 57 (1988)(applying Back elements to

negligent design claim). As the First Circuit has clearly held, "in a design defect case

premised on negligence, the existence of a safer alternative design is the sine qua non for

the imposition of liability." Kotler v. American Tobacco Co., 926 F.2d 1217, 1225 (1st.

Cir. 1990), vacated on other grounds, 505 U.S. 1215 (1992), judgment of affirmance

reissued, 981 F.2d 7 (1st. Cir. 1992).

Plaintiff's discovery responses show that he lacks any evidence supporting his

claim of a design defect in the Waltco lift gate which he allegedly used. In fact, the

plaintiff's answers to interrogatories do not even address his design defect claim, despite

a request for the basis of such claims in Interrogatory Nos. 12 and 13. Moreover, at his

deposition the plaintiff stated that he was "not aware of" any "design defect or other

problem with the lift gate." Ex. C. at p. 139. As with his manufacturing defect claim, it

is clear that the plaintiff never sought to establish a basis for his design defect claim

before filing suit against Waltco. As such, summary judgment must be entered.

## III.    Plaintiff Has No Evidence From Which A Reasonable Jury Could Find That Waltco Breached Its Duty To Warn

To prevail on a claim of failure to warn, under either a negligence or breach of

warranty theory, plaintiff must show that Waltco failed to warn of "reasonably known

dangers associated with ordinary use of the product." Wajda, 104 F.Supp.2d at 33, citing

Vassallo v. Baxter Healthcare Corp., 428 Mass. 1 (1998); Hoffman v. Houghton

12

Chemical Corp., 434 Mass. 624, 637 (2001)("negligent failure to warn and failure to warn under breach of warranty are to be judged by the same standard"). There is no duty to warn where the danger is obvious. See Kotler, 403 Mass. at 59. For a warning to be adequate it need only "be 'comprehensible to the average user', conveying the danger 'to the mind of a reasonably prudent person.'" Wasaylow v. Glock, Inc., 975 F.Supp. 370,

378 (D.Mass. 1996), quoting MacDonald v. Ortho Pharm. Corp., 394 Mass. 131, 140 (1985).

The plaintiff's deposition admissions make clear that he cannot prove causation with respect to his failure to warn claim. Massachusetts' laws are clear that a plaintiff who does not read warnings cannot complain that their alleged inadequacy caused his injuries. Wasaylow v. Glock, 975 F.Supp. 370, 378 (D.Mass. 1996)(Granting summary judgment on failure-to-warn claim where explicit warnings were given in instruction manual and on storage case and plaintiff failed to read same), citing Knowlton v. Deseret Medical, Inc., 930 F.2d 116, 123 (1st. Cir. 1991). When asked at his deposition if he received and/or read any written instructions concerning the safe operation of the lift gate, he answered "I don't believe I ever did". Ex. C. at pp. 134-135. In fact, the following exchange took place:

> Q.   Do you know what the manufacturer's product information or documents say about pretrip inspections?
> A.   I was not given any – anything as far as the lift gate, any information, literature.
> Q.   So as of September 30, 2000, you had not been provided with any of the manufacturer's documents concerning safe operation and inspection of the lift gate?
> A.   Not from the manufacturer.
> Q.   How about from anyone else?
> A.   Well, our foreman when we were taught earlier.
> Q.   Did he give you any written documents?
> A.   No.

Q.    So you just got word of mouth instruction?
A.    And hands on.
Q.    All right. Is it fair to say that at no time did you ever receive any written documents concerning the safe operation of the lift gate from anyone?
A.    I don't believe I ever did.

Id.

Moreover, in light of the mechanism of the plaintiff's accident, there is no basis

for his contention that warnings would have done any good. Mercer claims that the accident took place as he walked backwards from the bed of the truck and attempted to step onto the lift gate. Mercer described his method of unloading the truck as follows: "Simply sway [the stack of crates] back and forth, dragging as you go, pulling as you go." Id at 198. He claims that the accident occurred because, unbeknownst to him, the lift gate dropped about 5-8 inches from when he had last seen it several minutes before. Once the plaintiff looked at the lift gate following the alleged accident, he had no difficulty in observing the openness and obviousness of the hazard presented by the allegedly dropped lift gate. Id at 206. Moreover, once the plaintiff began paying attention to the lift gate, he had no further incidents even though the lift gate supposedly continued dropping at each of the next 12-14 stops that he made. Id at 212. Clearly, the danger of a dropped lift gate was not a hidden one and required no warning as to its significance. Moreover, the dangers attendant to not watching where you are going while unloading a truck could not be more obvious, and it is unreasonable to expect a lift gate manufacturer to post a warning to users to look where they are going while loading or unloading a truck. See Kotler, 403 Mass. at 59.

**IV.    Plaintiff Has No Evidence From Which A Reasonable Jury Could Find That Waltco Breached Any Express Warranty**

14

Under Massachusetts law, an express warranty arises only by (1) "affirmation of fact or promise made by the seller to the buyer which relates to the goods", or a description, sample, or model of the goods, where (2) the promise, description, or sample is "part of the basis of the bargain." M.G.L. c. 106, sec. 2-313.

In his discovery responses, plaintiff has again revealed that he has no evidentiary

Case 1:03-cv-12282-MBB    Document 27-2    Filed 10/18/2005    Page 17 of 22

support for either of these elements. In none of his responses has plaintiff ever alleged any specific fact, promise, description, sample or model that gave rise to an express warranty, much less offered any evidence of such. Ex. B, Ans. No. 14. Similarly, plaintiff has offered no evidence that any representation formed part of the basis of the bargain in Defendant Waltco's alleged sale of its products. Id.

## V.    Plaintiff Has No Evidence From Which A Reasonable Jury Could Find That Waltco Breached An Implied Warranty Of Fitness For A Particular Purpose

To prevail on a claim of breach of an implied warranty of fitness for a particular purpose a plaintiff must show that (1) the seller had reason to know of the particular purpose for which the buyer required the goods, (2) the seller had reason to know the buyer's reliance on the seller's skill and judgment in selecting or furnishing goods suitable for that purpose, and (3) the buyer in fact relied on the seller. M.G.L. c.106, sec. 2-315. Moreover, the warranty of fitness requires the buyer to have a particular use that differs from the product's ordinary usage. Fernandez v. Union Book Binding Co., 400 Mass. 27, 35 (1987)("Comment 2 to section 2-315 explains that the implied warranty of fitness for a particular purpose 'envisages a specific use by the buyer which is peculiar to the nature of his business whereas ordinary purposes for which goods are used are those envisioned in the concept of merchantability and go to uses which are customarily of the goods in question'").

As with his other claims, discovery has revealed that the plaintiff has no evidentiary support for his claim that Defendant Waltco breached any implied warranty of fitness for a particular purpose, or for that matter whether it even made representations in connection with the sale of the lift gate at issue in this case. The following exchange took place at the plaintiff's deposition:

| | |
|---|---|
| Q. | Do you know from whom the trucks were originally bought or the specific truck in question? |
| A. | I know the make was an International. I don't know where they bought them. |
| Q. | Do you know whether the trucks were delivered with the lift gates on them? |
| A. | No idea. |
| Q. | Do you know from whom the lift gates were purchased? |
| A. | No idea. |
| Q. | Do you know who installed the lift gates? |
| A. | No. |
| Q. | Do you know when the lift gates were installed? |
| A. | …No. |

Ex. C at pp. 146-147.

## VI.    Mercer And Ryder's Failure To Place Waltco On Notice Is Tantamount To Spoliation Of Evidence.

It is well established that a litigant has a duty to preserve evidence. <u>See</u> <u>Townsend v. American Insulated Panel Co., Inc.</u>, 174 F.R.D. 1, 3 (D. Mass. 1997). In the present case, plaintiff and co-defendant Ryder failed to satisfy their respective duties to take steps to preserve the evidence that forms the basis of its suit, i.e., the Waltco lift gate, until such time as Waltco had a reasonable opportunity to inspect it. Plaintiff and Ryder's intentional or negligent failure to preserve the lift gate constitutes actionable spoliation of evidence.

The duty of a party to preserve evidence may arise prior to the time actual notice of a claim is received, as where "a litigant or expert knows or reasonably should know

16

that the evidence might be relevant to a possible action." Kippenhan v. Chaulk Services.

Inc., 428 Mass. 124, 127 (1998) citing Nally v. Volkswagon of Am.. Inc., 405 Mass.

191, 197-198 (1989). In the present case, a reasonable person in either the plaintiff or

Ryder's position would have realized that Ryder and the plaintiff's employer, Garelick

Farms, would continue to use the delivery truck and lift gate following the accident, and

that the condition of the lift gate might change over time (either by improvements/repairs

or deterioration/wear and tear). Indeed, according to records from co-defendant Ryder,

just less than 160,000 miles were put on the involved truck between September 30, 2000

(the date of the alleged accident) and January 6, 2005 (i.e. about the time that the plaintiff

identified a Waltco product and performed his inspection of the vehicle). Ex. E, reports

dated September 30, 2000 and January 6, 2005. Also, according to Ryder's records,

about 145,000 miles were put on the truck between the date of the alleged accident and

the date when Waltco was first informed of the accident (i.e. October 27, 2003). Ex. E,

report dated October 27, 2003. Ryder's records also reveal that a substantial amount of

maintenance work had been performed on the vehicle during the time period in question.[4]

---

[4] February 16, 2000—the hydraulic flow control valve assembly was replaced, Ex. F; March 6, 2000—electric pump motor of the power tailgate was replaced, Ex. E and Ex. F dated March 7, 2000; May 13, 2000—the lift handle springs were replaced and the solenoid switch was repaired, Ex. E; September 20, 2000— the lift was repaired and adjusted, Ex. E; September 25, 2000—the lift angle was adjusted, Ex. E; October 1, 2000—the lift was repaired and adjusted, Ex. E; October 31, 2000—the lift release valve was adjusted, Ex. E; November 4, 2000—the lift flow valve was adjusted, Ex. E; November 6, 2000—reservoir of the hydraulic lift system was repaired, Ex. F; November 9, 2000—electric pump motor was replaced, Ex. F; April 5, 2001—platform assembly and pump motor were replaced, Ex. F; November 5 and 6, 2001—hydraulic pump assembly was replaced, Ex. F; March 21, 2002—replaced left side pins, replaced adjustment bolt, welded arm bracket on left and adjusted lift, , Ex. E; March 22, 2002—platform assembly was replaced, Ex. F; March 25, 2002—replaced sand filter, replaced battery, Ex. E; March 27, 2002—adjusted lift release valve, replaced sand filter in lift piston, replaced lift pump box thumb screws with Phillips machine screws, Ex. E; November 12, 2002—reservoir of the hydraulic lift was replaced, Ex. E; November 30, 2002—adjusted lift and door operator, lift needs rebuilding, Ex. E; December 12, 2002—spring, torsion, and the lift/tilt controls were replaced, Ex. F; January 22, 2003—repaired spring for lift gate handle, Ex. E; March 10, 2003—valve, tilt control, and hydraulic lift system were replaced, Ex. F; April 2, 2003—welded lift gate, replaced lift battery, Ex. E; July 25, 2003—replaced lift platform, Ex. F; August 7, 2003—replaced lift platform, Ex. F; August 12, 2003—replaced lift platform, Ex. F; August 19,

The plaintiff should have anticipated that the condition of the vehicle and lift gate could change dramatically as a result of ordinary usage and maintenance of the type described above.  Moreover, in light of the plaintiff's belief that Ryder did a relatively poor job of performing maintenance, he should have anticipated that there would be significant deterioration of the lift gate during the pertinent time period.  This is

especially true in light of the plaintiff's admission that he knew dirty oil in a hydraulic piston could compromise the performance of a lift gate.  Ex. C, at pp. 128-129.  Despite his knowledge of how maintenance could impact the functioning of a lift gate, Mercer waited over three years before even notifying Waltco of his claim, and waited an additional fourteen months before identifying the product supposedly at issue.  Moreover, Ryder modified the product as indicated above without first placing Waltco on notice.  Consequently, Waltco has been severely prejudiced in that it has potentially been deprived of its ability to fully investigate issues such as whether inadequate maintenance or the usage of non-original equipment manufacturer products caused or contributed to the happening of the alleged product failure.  As the plaintiff and Ryder could have avoided prejudice to Waltco by simply notifying Waltco of the claim in a timely fashion, it would be grossly unfair to let either the plaintiff or co-defendant profit from that delay now.

**A.    The Remedy For Plaintiff's Actionable Spoliation of Evidence is For This Court to Order That Plaintiff Cannot Introduce Evidence Regarding the Condition of the Lift Gate Before or After the Accident.**

---

2003—replaced all lift gate batteries and alternators, Ex. E; December 26, 2003—replaced lift switch, cam mount and solenoid, Ex. E; January 6, 2004—switch/solenoid control was replaced, Ex. F.

The exclusion of evidence is the usual remedy for the spoliation of evidence. Kippenhan v. Chaulk Services., Inc., 428 Mass. 124, 127 (1998). This remedy "may be appropriate for the spoliation of evidence, even if that occurs even before an action has been commenced, if a litigant . . . knows or reasonably should know that the evidence might be relevant to a possible action." Id., *citing* Nally v. Volkswagon of America, Inc.,

405 Mass. 191, 197-98 (1989). The rule excluding evidence for spoliation is based on both the unfair prejudice that would otherwise result and the fact of a negligent or intentional destruction of physical evidence. Kippenhan v. Chaulk Services, Inc., 428 Mass 124, 127 (1998). Accordingly, because the plaintiff and Ryder's failure to notify Waltco of the claim in a timely fashion in order to allow Waltco to meaningfully inspect the lift gate, this Court should order that neither the plaintiff nor Ryder can introduce evidence regarding the condition of the subject lift gate before or after Mercer's accident.

**B.**     **Absent Evidence of the Condition of the Subject Lift Gate Before and After the Plaintiff's Alleged Accident, Plaintiff Has No Reasonable Expectation of Proving That Waltco's Product Was in Unreasonably Dangerous Condition or That a Waltco Product Caused the Accident.**

In a product liability case, an essential element that the plaintiff must show is that the product was defective and unreasonably dangerous at the time that it left the manufacturer's control. See Smith v. Ariens Co., 375 Mass. 620 (1978). The plaintiff must also prove that the subject lift gate's "design was not fit for ordinary usage because of a defect making it 'unreasonably dangerous.'" Wasylow v. Glock, Inc., 975 F.Supp. 370, 379 (D. Mass. 1996) *quoting* Cotler v. Barber-Greene Co., 403 Mass. Mass. 50, 61-62 (1988). To meet this burden, the plaintiff must utilize expert testimony to prove his design defect claim. See Enrich v. Windmere Corp., 416 Mass. 83, 87 (1993).

19

Because the plaintiff's expert(s) did not inspect the lift gate until over four years after the accident, no credible evidence will be presented that the dropping of the lift gate on the date of the alleged accident probably, rather than possibly, resulted from a design or manufacturing defect. The cause of the alleged failure could just as easily be related to Ryder's failure to properly maintain the lift gate, including its failure to ensure that the oil

in the hydraulic piston chamber was clean. If "on all the evidence, it is just as reasonable to suppose that the cause is one for which no liability would attach to the defendant as one for which the defendant is liable," then judgment must be entered for the defendant. Corsetti v. Stone, 396 Mass. 1, 24 (1985). *Citing* O'Shaughnessy v. Besse, at 729, quoting Bigwood v. Boston & No. St. Ry., 209 Mass. 345, 348 (1911). *Compare* Coyne v. John S. Tilley Co., supra at 237-238.

## VII.    Conclusion

For the reasons discussed above, Waltco states that Mercer and/or Ryder have no reasonable expectation of proving that Waltco's product was an unreasonably dangerous condition when it allegedly left Waltco's custody and control. Therefore, Waltco respectfully moves this Honorable Court allow its Motion for Summary Judgment on all claims against it.

Respectfully submitted,
Defendant, Waltco Trucking Equipment Company,
By Its Attorney,

Paul E. Mitchell, B.B.O. No. 550491
Mitchell & DeSimone
99 Summer Street
Boston, Massachusetts 02110
(617) 737-8300