UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KENNETH R. MERCER, and )
CYNTHIA MERCER )
                      Plaintiffs, )
                              )
v.                             ) CIVIL ACTION NUMBER
                              ) 1:03-CV-12282 MBB
RYDER TRUCK RENTAL, INC., and )
WALTCO TRUCK EQUIPMENT COMPANY )
                      Defendants. )

**DEFENDANT, WALTCO TRUCK EQUIPMENT COMPANY'S
SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF MOTION OF
FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56**

Defendant, Waltco Truck Equipment Company ("Waltco"), having received permission from the Court, respectfully submits this supplemental memorandum in support of its Motion for Summary Judgment.

### Introduction

In its original memorandum in support of its Motion for Summary Judgment, Waltco argued that judgment must be entered for Waltco in this product liability action in which plaintiff alleges that Defendant Waltco manufactured and/or sold a hydraulic lift gate which was then attached to the tailgate of a delivery truck. As one of its arguments Waltco stated that judgment should be entered in its favor due to the failure of the plaintiff and the co-defendant to notify Waltco of the alleged accident until over three years after the alleged accident, at a point long after the product at issue had been modified by co-defendant Ryder Truck Rental, Inc., including the replacement of key parts and the performance of other maintenance to it. As a result, Waltco argued that it has been severely prejudiced by its inability to inspect the lift gate prior to any post-

accident modification. Subsequent to Waltco filing its Motion for Summary Judgment, numerous depositions have occurred which provide additional relevant testimony in support of Waltco's spoliation argument. Therefore, with the Court's permission Waltco has filed this supplemental motion which will bolster its argument and further support its claim that Summary Judgment should enter in Waltco's favor in this matter.

## SUPPLEMENTAL ARGUMENT

### Plaintiff's Failure to Notify Waltco of Claim Prior to Modification of the Lift Gate by co-Defendant Ryder.

As stated in the underlying Memorandum in Support of the Motion for Summary Judgment, the plaintiff did not put Waltco on notice of his claim until October 27, 2003—over three years after the alleged accident—when Waltco was served with the plaintiff's Complaint. Ex. B[1], Ans. No. 8. Furthermore, it wasn't until January 14, 2005, that the Plaintiff finally identified the alleged product at issue as "Waltco Model No. 203R/S, Serial No. 384067". See Answers of the Plaintiff Kenneth R. Mercer to Waltco Truck Equipment Company's First Set of Interrogatories, Ex. "B", No. 1. As previously described in its memorandum in support of its motion for summary judgment, the truck at issue was driven about 145,000 miles between the date of the accident and when Waltco was informed of the suit. See Driver's Vehicle Condition Reports, Ex. "E", report dated October 27, 2003.

In the First District, it is well established that a litigant has a duty to preserve evidence. See Townsend v. American Insulated Panel Co., Inc., 174 F.R.D. 1, 3 (D. Mass. 1997). The duty of a party to preserve evidence may arise prior to the time actual

---

[1] In the interest of brevity, any exhibits submitted with the original motion for summary judgment have not been included in this supplement, and have been cited under their original exhibit heading.

notice of a claim is received, as where "a litigant or expert knows or reasonably should know that the evidence might be relevant to a possible action." Kippenhan v. Chaulk Services, Inc., 428 Mass. 124, 127 (1998) *citing* Nally v. Volkswagon of Am., Inc., 405 Mass. 191, 197-198 (1989). In the present case, the plaintiff and co-defendant Ryder failed to satisfy their respective duties to take steps to preserve the evidence that forms the basis of its suit, i.e., the Waltco lift gate, until such time as Waltco had a reasonable opportunity to inspect it. Plaintiff and Ryder's intentional or negligent failure to preserve the lift gate constitutes actionable spoliation of evidence. Moreover, as a consequence of the numerous modifications to the product in question both before and after the alleged accident, the Plaintiff's cannot possibly meet their burden of proving through expert testimony that the product at issue was defective on the date of the alleged accident. See Enrich v. Windmere Corp., 416 Mass. 83, 87 (1993).

In addition to the evidence previously provided by Waltco, it is clear based upon the testimony of numerous individuals that the truck underwent extensive pre- and post-accident changes which constitutes spoliation of evidence. The deposition testimony of Philip Michaud ("Mr. Michaud") clearly establishes that the Plaintiff's and Ryder made substantial modifications to the lift in question both pre and post accident. Mr. Michaud held a position at Garelick Farms from 1991 until 1997 when Ryder took over the management of Garelick Farms' truck fleet, at which time Mr. Michaud became employed by Ryder. Exhibit "G", Deposition of Philip Michaud, Pgs. 13-15. Mr. Michaud worked at the Garelick Farms location until the spring of 2000, when he was transferred to a Ryder facility in Warwick, Rhode Island. Id. Mr. Michaud testified that he remained in Warwick from the spring of 2000 into calendar year 2001. Id. Mr.

Michaud returned to the Garelick Farms facility in 2001, where he remained until he left his job in January 2005. Id.

Mr. Michaud testified as to Ryder's practice of "retrofitting" Waltco lift gates on their vehicles, including the one involved in the present case. This work was performed after the "spring of 2001", which was well after the accident. Id. at 56, 117, 123-124. According to Mr. Michaud, Ryder received new trucks with preinstalled Waltco lifts. Id. at 61-64. The lift motor assembly would be located in the center of the tailgate at the time of delivery. Id. It was Ryder's practice, including on the vehicle in question, to remove the motor, control rod, hydraulic reservoir and control shaft assembly, and then reinstall the motor on the passenger side of the lift gate, to the right hand (passenger) side of the truck tailgate frame. Id. at 56, 61-64. Mr. Michaud testified that these changes were made for convenience, as it became "easy" to maintain and inspect the motor, and "easier" for the driver to access the motor. Id. at 64. Upon reinstallation of the motor, Ryder would also install a metal box around the motor. Id. at 56. As part of the retrofit, Ryder would drill a new hole in the control shaft to line up with the location of the motor. Id. at 59. Ryder would also install a new control lever on the control shaft. Id. at 145-148. All of these changes as part of the "retrofitting" process occurred after the accident at issue in the present case. Of note, on or about August 18, 1999, Mr. Michaud testified that he inspected the truck in question. Id. at 84-85. At that time, he did not note any problems with the lift gate. Id. at 85.

Further testimony that establishes that there was spoliation of evidence which adversely affected Waltco was provided by Jeffery Lilley ("Mr. Lilley"). During the deposition of Mr. Lilley, who is currently the Maintenance Manager for Ryder, he

4

indicated that on November 3, 2001, more than a year after the accident, the lift gate at issue's electric motor and hydraulic pump were repositioned to the right side of the truck and that a metal box was added to incase the motors. Exhibit "H", Deposition of Jeffrey Lilley, Day Two, Pg. 38-40. Mr. Lilley indicated that Ryder moved the lift components on about 40 trucks including the truck at issue because the electric motors were, in Ryder's view, not lasting for as long as they wanted. Id. at Pg. 41-42. He confirmed that all of this repositioning occurred in late 2001, and he stated that the metal boxes added to the lift were sold or supplied by Waltco. Id. at 40-42. Mr. Lilley also testified that on November 9, 2000 the lift gate pump motor was replaced on the truck at issue. Id. at 22, 24.

Michael Russo ("Mr. Russo") a 47 year old mechanic at Ryder also gave testimony which supports a claim of spoliation of evidence. Mr. Russo stated that he performed work on the subject vehicle on a September 20, 2000 after a driver complained that the "liftgate does not stay up all the way." Exhibit "I", Deposition of Michael Russo, Pg. 137. Mr. Russo acknowledged that he "repaired lift and adjusted" as a result of the complaint. Id. Mr. Russo further conceded that on November 6, 2000, after the accident, Ryder performed work on the "pump motor-electric, power tailgate" as well as the "repair reservoir, hydraulic lift system" and had replaced part of the lift assembly. Id. at 157-162.

Finally, Timothy Tetreault, a technician at Ryder testified in his deposition that he "adjusted the lift gate" on the subject vehicle on or around September 25, 2000. Exhibit "J", Deposition of Timothy Tetreault, Pg. 29.

As clearly outlined above, the Plaintiff and Ryder made multiple changes to the subject vehicle, after the accident, which violated their duties to take steps to preserve the evidence and severely prejudiced Waltco. The plaintiff should have notified Waltco of the claim, but instead waited over three years, and waited an additional fourteen months before identifying the product supposedly at issue. Moreover, Ryder modified the product as indicated above without first placing Waltco on notice.

Consequently, Waltco has potentially been deprived of its ability to fully investigate issues such as whether inadequate maintenance or the usage of non-original equipment manufacturer products caused or contributed to the happening of the alleged product failure. Also, any theory of liability against Waltco can only be the product of speculation, since the Plaintiff's own experts would not have had the opportunity to inspect the product in question before the modifications were made.[2]

As the plaintiff and Ryder could have avoided prejudice to Waltco by simply notifying Waltco of the claim in a timely fashion, it would be grossly unfair to let either the plaintiff or co-defendant profit from that delay now. Accordingly, because the plaintiff and Ryder's failure to notify Waltco of the claim in a timely fashion in order to allow Waltco to meaningfully inspect the lift gate, this Court should order that neither the plaintiff nor Ryder can introduce evidence regarding the condition of the subject lift gate before or after Mercer's accident.

---

[2] If the Plaintiff's experts did inspect the product prior to the aforementioned modifications without inviting Waltco to attend, it would be another basis for Plaintiff's expert opinions to be disregarded by the Court at this time.

Respectfully submitted,
Defendant, Waltco Trucking Equipment Company,
By Its Attorney,

Paul E. Mitchell, B.B.O. No. 550491
Mitchell & DeSimone
99 Summer Street
Boston, Massachusetts 02110
(617) 737-8300